IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 32BJ, DISTRICT 36, et al. | : : : : | CIVIL ACTION NO. 18-2180 |
| Plaintiffs, | : : | |
| v. | : : | |
| SHAMROCKCLEAN, INC. | : : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.　　　　　　　　　　　　　September 7, 2018

In this action, a labor union, the union's pension trust fund, and the trustee for the fund have brought claims against a commercial cleaning company under the Employee Retirement Income Security Act of 1974, alleging that the company failed to make contributions to the pension fund, as required by the collective bargaining agreement between the company and the union.  Plaintiffs seek either the unpaid installment amounts or a single-sum liability amount.  After Defendant failed to appear, plead, or defend against Plaintiffs' complaint, the clerk entered default.  Plaintiffs now move for entry of judgment by default.  The Court held a hearing, at which Defendant did not appear.  For the reasons that follow,

the Court will grant Plaintiffs' motion, enter judgment, and close the case.

I.  BACKGROUND

Plaintiffs are the Service Employees International Union Local 32BJ District 36 ("the Union"), the Service Employees International Union Local 32BJ District 36 Building Operators Pension Fund ("the Fund"), and Wayne MacManiman, Jr., the trustee for the Fund ("the Trustee," and together with the Union and the Fund, "Plaintiffs"). Compl. ¶¶ 1-5, ECF No. 1. Defendant ShamrockClean, Inc. ("Defendant") is Florida corporation that provides commercial cleaning services and that does business in Pennsylvanian and Delaware. Id. ¶ 8.

The Fund is a joint labor-management trust plan established pursuant to Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5), which was created and is maintained to collect and receive contributions from various employers having collective bargaining agreements with the Union, and to provide pension benefits to eligible participants and beneficiaries. Id. ¶ 2. Plaintiffs allege that the Fund is an "employee benefit plan" within the meaning of Section 3(2)(A) of ERISA, as well as a "multiemployer plan" within the meaning of Section 3(37) of ERISA, and Section 4001(a)(3) of ERISA. Id. ¶ 3.

2

Plaintiffs allege that Defendant was a party to a collective bargaining agreement ("the CBA") with the Union that obligated Defendant to make prompt monthly contributions to the Fund on behalf of employees represented by the Union and covered by the CBA. Id. ¶ 11. According to Plaintiffs, during the 2015 plan year, Defendant effected a complete withdrawal from the Fund, as defined by Section 4203(a)(1) of ERISA, by permanently ceasing its obligation to contribute under the plan while continuing to perform the same type of work, within the same jurisdiction, for which it previously had a contribution obligation. See id. ¶ 12.

As a result, on December 15, 2017, the Fund sent Defendant a letter advising it that the Fund had calculated Defendant's withdrawal liability in the amount of $152,836.00, payable in 61 quarterly installments of $4,701.90, plus a final payment of $3,127.83. Id. ¶ 13; Ex. A. The letter advised Defendant that it had the right, within 90 days, to demand certain information from the Fund in order to verify, request review, and/or contest Defendant's withdrawal liability and to demand arbitration of any unresolved dispute. Id. ¶ 14.

Plaintiffs allege that, despite the notice provided to Defendant, including subsequent correspondence repeating Defendant's obligation, Defendant failed to make quarterly installment payments that were due beginning on October 23,

2017, and January 3, 2018.  Id. ¶ 16.  Accordingly, the Fund sent another letter to Defendant notifying Defendant that it was delinquent, and demanding payment immediately.  Id. ¶ 17. Defendant continued to fail to make payment, and also failed to make quarterly installment payments for the period ending April 3, 2018.  Id. ¶¶ 19, 20.

On May 23, 2018, Plaintiffs filed this action against Defendant, bringing (1) one claim for unpaid withdrawal liability installments in the amount of $12,512.70 (Count I), and, in the alternative, (2) one claim for accelerated single sum liability in the amount of $152,836.00 (Count II).  Id. ¶¶ 21-34.  Plaintiffs also seek pre-judgment interest, liquidated damages, and attorneys' fees and costs.  Id.

The summons and complaint were served on Defendant on June 14, 2018.  ECF No. 2.  On July 9, 2018, Defendant having failed to respond to the complaint, Plaintiffs filed a request for entry of default.  ECF No. 4.  The Clerk of Court entered default the same day.  On July 17, 2018, Plaintiffs filed a motion for default judgment.  ECF No. 5.

The Court scheduled a hearing on Plaintiffs' motion for default judgment for August 13, 2018.  ECF No. 6.  The Court also ordered Plaintiffs' counsel to serve a copy of the order setting the hearing on Defendant.  See id.  On August 9, 2018,

Plaintiffs filed a certificate of service establishing that service was made on August 4, 2018. ECF No. 7.

On August 13, 2018, the Court held a hearing on the motion for default judgment. Neither Defendant nor any counsel for Defendant appeared at the hearing. The Court is now ready to rule on the motion.

## II. LEGAL STANDARD

After a clerk enters default pursuant to Federal Rule of Civil Procedure 55(a) against a party that has "failed to plead or otherwise defend" an action, the party may be subject to entry of a default judgment. Fed. R. Civ. P. 55. If "the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," the clerk may enter a default judgment in favor of the plaintiff. Fed. R. Civ. P. 55(b)(1). If those circumstances do not apply, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2); see also, e.g., Eastern Elec. Corp. of N.J. v. Shoemaker Constr. Co., 657 F. Supp. 2d 545, 552 (E.D. Pa. 2009) (granting motion for entry of default judgment pursuant to Rule 55(b)(2)).

Whether or not to grant a party's motion for entry of default judgment "is left primarily to the discretion of the district court." United States v. $55,518.85 in U.S. Currency, 728 F.2d 192, 194 (3d Cir 1984)). However, because a party is

5

not entitled to default judgment as of right, and because the entry of default judgment precludes consideration of a case on its merits, "[m]atters involving large sums should not be determined by default judgments if it can reasonably be avoided." Tozer v. Charles A. Krass Milling Co., 189 F.2d 242, 245 (3d Cir. 1951).

The Third Circuit has held that a district court evaluating a motion for entry of default judgment should consider three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000) (citing $55,518.85 in U.S. Currency, 728 F.2d at 195).[1] A court accepts as true any factual allegations, other

---

[1] In non-precedential opinions, the Third Circuit has criticized its own Chamberlain factors, noting that $55,518.05 in U.S. Currency originally set out the test in the context of a motion to vacate a default judgment brought by a defendant, where the defendant had the ability to assert a litigable defense, if one existed, and to argue that his delay was due to culpable conduct. See, e.g., Hill v. Williamsport Police Dept., 69 F. App'x 49, 51-52 (3d Cir. 2003) (asserting that Chamberlain "perhaps counterintuitively" applies the three-part test to a motion seeking default judgment, but noting that, "[w]hatever the merits" of Chamberlain, the Third Circuit's Internal Operating Procedures require the panel to follow Chamberlain pending en banc review and reversal, and the district court "had no choice but to do the same"). To the extent the Chamberlain factors are "counterintuitive" where a defendant has not appeared in the action, they are still the law in the Third Circuit, and the Court is bound to apply them.

than those as to damages, contained in the complaint. DIRECTV, Inc. v. Pepe, 431 F.3d 162, 165 n.6 (3d Cir. 2005).

**III. DISCUSSION**

Plaintiffs argue that default judgment is appropriate because Defendant defaulted on its obligation to pay withdrawal liability and failed to cure the default. See Mem. Law Support Mot. Default J. ("Pls.' Mem."), ECF No. 5-1.

"[B]efore granting a default judgment, the Court must first ascertain whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (quoting Directv, Inc. v. Asher, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)). The Court will first address whether Defendant is liable to Plaintiffs for withdrawal liability, and whether Plaintiffs have submitted sufficient information to justify the relief sought. The Court will then analyze whether the Chamberlain factors indicate that the Court should grant Plaintiffs' motion. Finally, the Court will determine the appropriate amount of damages.

A.  <u>Plaintiffs' Right to Recover Withdrawal Liability</u>

Plaintiffs allege that Defendant failed to pay "withdrawal liability," as required under the CBA, ERISA, and the the Multiemployer Pension Plan Amendments Act ("MPAAA"), 29 U.S.C. § 1381-1461. See Compl. ¶¶ 12-16.

Under ERISA and the MPAAA, when an employer who is a signatory to a multiemployer defined-benefit pension plan withdraws from the plan, the employer must pay its fair share of a plan's "unfunded vested benefit" ("UVB") prior to the withdrawal. 29 U.S.C. § 1381(a). This statutory requirement is known as "withdrawal liability."

The requirements for the notice and collection of withdrawal liability are specified in Section 1399 of ERISA. Upon an employer's failure to pay withdrawal liability, a plan sponsor may make a demand for withdrawal liability, which is payable beginning no later than 60 days after the date of the demand. 29 U.S.C. § 1399(c)(2). If an employer fails to make a withdrawal liability payment that is due, and does not cure that failure within 60 days after the employer receives written notification from the plan sponsor, the employer is in "default" under Section 1399. In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of the employer's withdrawal liability. 29 U.S.C. § 1399(c)(5).

Any dispute between an employer and the plan sponsor is generally resolved through arbitration. Either party may initiate an arbitration proceeding within a 60 day period after the earlier of the date of notification or 120 days after the date of the employer's request for review. 29 U.S.C. § 1401. If no arbitration proceeding has been initiated by either party within the statutory time period, the amounts demanded by the plan sponsor become due and owing as a matter of law. Id.; see also IUE Pension Fund v. Barker & Williamson, Inc., 788 F.2d 118, 130 (3d Cir. 1986).

Plaintiffs allege that (1) Defendant was required to pay withdrawal liability; (2) Defendant failed to pay withdrawal liability; (3) the Fund sent Defendant a letter on December 15, 2017, demanding the payment of the outstanding withdrawal liability; and (4) Defendant failed to pay the outstanding withdrawal liability within 60 days of the demand, as required under ERISA. See Compl. ¶¶ 11-17. According to Plaintiffs, Defendant then continued to fail to make quarterly payments, as required, for October 23, 2017, January 3, 2018, and April 3, 2018. See id. ¶¶ 16-20. These allegations, which must be taken as true for purposes of this motion, establish a violation of Section 1381 and 1399 of ERISA.

Section 1145 of ERISA provides that every employer who is obligated to make contributions to a multi-employer plan

under the terms of the plan or under the terms of a collectively bargained agreement must make such contributions in accordance with the terms of the plan or agreement. 29 U.S.C. § 1145. Under ERISA, an employer's failure to make withdrawal liability payments pursuant to Section 1401 is treated as a delinquent contribution in accordance with Section 1145.

ERISA provides that in any action by a fiduciary against delinquent employer contributors in which judgment in favor of the plan is awarded, the court shall award the plan:

(A)  the unpaid contributions,

(B)  interest on the unpaid contributions,

(C)  an amount equal to the greater of—

  (i)  interest on the unpaid contributions, or

  (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D)  reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E)  such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

Thus, under Sections 1401 and 1145 of ERISA, Plaintiffs have the right to recover the unpaid withdrawal liability, together with the other damages, fees, and costs specified in Section 1132(g). See 29 U.S.C. §§ 1145, 1401.

B. Chamberlain Factors

Next, the Court should consider the Chamberlain factors: (1) prejudice to Plaintiffs if default judgment is denied, (2) whether Defendants appear to have a litigable defense, and (3) whether Defendants' delay is due to culpable conduct. Chamberlain, 210 F.3d at 164.

First, Plaintiffs will certainly be prejudiced if default judgment is denied, as Plaintiffs have not yet received the withdrawal liability that they are owed.

Second, Defendant does not appear to have a litigable defense, at least on the papers that Plaintiffs have submitted: Defendant withdrew from the Fund and has not paid withdrawal liability, as required by the CBA and ERISA. Plaintiffs provided notice, as required under ERISA, and Defendant failed to cure the default within 60 days and continued to fail to pay withdrawal liability. Given that the allegations are accepted as true at this stage and that they establish Defendant's liability, there does not appear to be a litigable defense.

With respect to culpable conduct, the final factor, it does not appear that Defendant has committed any bad faith conduct aside from simply failing to respond to the action. The Third Circuit has explained that "culpable conduct" is conduct that is "taken willfully or in bad faith." Gross v. Stereo Component Sys., Inc., 700 F.2d 120, 123-24 (3d Cir. 1991). Plaintiffs have not provided any record evidence that Defendant's actions were in bad faith, but Defendant's failure to respond to the complaint and failure to attend the hearing were both "willful," in the sense that Defendant accepted service of the complaint and the order setting the hearing and therefore was aware of the complaint and the hearing. To this date, Defendant still has not responded to Plaintiffs' Complaint, entered an appearance, or participated in this action in any way, despite having accepted service through the registered agent for service of process on the company.

On balance, the Chamberlain factors support the entry of default judgment in this case.

C. Damages

Having determined that Plaintiffs are entitled to the entry of default judgment, the Court must calculate the proper amount of damages and attorneys' costs and fees.

In support of their motion, Plaintiffs have submitted an affidavit by their attorney explaining the calculation of Defendant's withdrawal liability as $152,836.00. See Certification of Amount Due in Support of Application for Default Judgment, ECF No. 5-3. The Court accepts this amount as adequately supported by Plaintiffs' counsel's certification, and unchallenged by Defendant.

Pursuant to Section 1132(g) of ERISA, Plaintiffs are entitled to (1) the full amount of the unpaid contributions; (2) interest on the unpaid contributions; (3) the greater of interest on the unpaid contributions or liquidated damages provided for under the plan in an amount not in excess of 20 percent; (4) reasonable attorney's fees and costs of the action, and (5) such other legal or equitable relief as the Court deems appropriate. See 29 U.S.C. § 1132(g)(2). Section 1132(g) also provides that interest on unpaid contributions shall be determined by using the rate specified by the plan, or, if none, the rate prescribed by the IRS. See id.

Here, the unpaid contribution is equal to the amount of withdrawal liability, which is $152,836.00. The Plan provides that interest accrues at the rate charged by the IRS under Section 6621(a) of the Internal Revenue Code, which is 4 percent, plus one additional percentage point, which results in an interest rate of 5 percent. See Mot. Default J. Ex. A at 1

13

¶ 2, ECF No. 5-2. Under Section 1399 of ERISA, interest is calculated from the date that the first payment was not made, which in this case was October 23, 2017. The amount of interest due is therefore $5,590.03. Regarding liquidated damages, the Plan provides that if a delinquent contribution is not paid, the Trustees will assess liquidated damages in an amount equal to 15 percent of the delinquent contribution. Here, that amount is $22,925.40 (15 percent of $152,836). As the liquidated damages amount is greater than the interest due, pursuant to Section 1132(g)(2)(C), liquidated damages are awarded in addition to interest. Thus, the total amount of damages is $181,351.43.

Finally, under Section 1132(g), Plaintiffs are entitled to reasonable attorneys' fees and costs. See 29 U.S.C. § 1132(g)(2)(D). Plaintiffs assert that their attorneys' fees and costs total $6,678.00 (consisting of $6,018.00 in attorneys' fees and $660.00 in costs). Plaintiffs based their calculation on a rate of $200.00 per hour for attorneys and $110.00 per hour for paralegals, which the Court finds reasonable in light of the prevailing market rates in the community. See Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). The Court also finds that the number of hours billed is reasonable in light of the work required in this case. Therefore, under the lodestar approach, see Hahnemann Univ. Hosp. v. All Shore, Inc.,

514 F.3d 300, 310 (3d Cir. 2008), the attorneys' fees are reasonable.

**IV. CONCLUSION**

For the reasons stated above, the Court will grant Plaintiffs' motion for entry of judgment by default, enter judgment for Plaintiffs and against Defendant in the amount of $188,029.43, together with post-judgment interest to run thereon at the rate of 4 percent from the date hereof until paid, and close the case.

An appropriate order follows.